## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

|  |  |
|---|---|
| STEVEN DASSA and BENJAMIN HINERFELD, on behalf of themselves and all others similarly situated,<br><br>       Plaintiffs,<br>  v.<br><br>VIZIO HOLDINGS, INC., VIZIO, INC., VIZIO INSCAPE SERVICES, LLC, VIZIO INSCAPE TECHNOLOGIES, LLC, COGNITIVE MEDIA NETWORKS, INC., and DOES, 1 through 50, inclusive<br><br>       Defendants. | **Case No. _____**<br><br><br>**CLASS ACTION COMPLAINT**<br><br><br>**DEMAND FOR JURY TRIAL** |

Steven Dassa and Benjamin Hinerfeld (together, "Plaintiffs"), by and through their undersigned counsel, upon personal knowledge as to themselves and their own acts and experiences, and upon information and belief as to all other matters, on behalf of themselves and all others similarly situated, allege as follows against Vizio Holdings, Inc., Vizio, Inc., Vizio Inscape Services, LLC, Vizio Inscape Technologies, LLC (collectively "Vizio"), and Cognitive Media Networks, Inc. ("Cognitive") (together with Vizio, "Defendants"):

### I.  NATURE AND FACTUAL BACKGROUND OF THE ACTION

1. This action arises from Vizio's sale of Internet-connectable televisions ("Smart TVs") that are equipped with Inscape software ("Inscape" or "Tracking Software"), and Defendants' subsequent use and disclosure to third parties of Plaintiffs' and the proposed Class Members' personally identifiable information, without their consent.

2. Vizio's Smart TVs connect to the Internet and have built-in Web browsers, and most with applications allowing the TV users to access Web-based services such as Netflix,

YouTube, Amazon Instant Video, and Hulu Plus. Unbeknownst to Plaintiffs who purchased Vizio Smart TVs, Defendants have undertaken a wide-ranging business strategy that collects, harvests, links and otherwise mines Plaintiffs' (and Class members') highly sensitive and private personally identifiable information, which Defendants sold to data brokers, advertisers and content creators, with the intent to monetize Plaintiffs' personal information.

3.     Vizio Holdings, Inc. was founded in California in 2002, and has emerged as a major marketer of electronics, including Smart TVs. Vizio's products are sold in over 8,000 retail stores across the United States, holding the number 2 unit share position in the U.S. smart, high definition television, or HDTV, industry in 2014. Vizio has captured roughly 35% of the Smart TV market in the U.S., with more than $3 billion in annual revenues, created by the 2014 sale of approximately 5.18 million Smart TVs[1].

4.     Through its extensive distribution of Smart TVs, Vizio states that it is "creating a community of over 10 million VIZIO connected units, or VCUs. A VCU is a Smart TV that has been connected to the Internet and has transmitted data collectively by our Inscape data services. Our Inscape data services capture real-time viewing behavior data from our VCUs and enable us to provide it to advertisers and media content providers."[2]

5.     According to Vizio, for the 12-month period ended September 30, 2015, approximately 90% of its Smart TV customers connected their Smart TVs to the Internet.[3] Vizio's Discovery and Engagement Software, known as VIZIO Internet Apps Plus, connects customers with "traditional and streaming content providers, such as Netflix, Hulu, YouTube and Amazon

---

[1] *See* http://www.sec.gov/Archives/edgar/data/1648158/000119312515350398/d946612ds1a.htm at 8, 15.
[2] *See id* at 2.
[3] *See id.*

Instant Video.  Since 2009, users have streamed more than 3.5 billion of hours of content through our discovery and engagement software."[4]



*See* http://www.sec.gov/Archives/edgar/data/1648158/000119312515350398/d946612ds1a.htm, at 90.

6.      Vizio's Inscape data services captures this viewing data in real time.  "Inscape provides highly specific viewing behavior data on a massive scale with great accuracy, which can be used to generate intelligent insights for advertisers and media content providers…" According to its October 22, 2015 SEC filing, Vizio expects that Inscape data services will fuel future growth and drive revenue.[5]

7.      To further realize its goal of monetizing its VCU television viewers' habits, on August 10, 2015, Vizio acquired full ownership of Cognitive, a software provider based in San Francisco, that enables Vizio's Inscape data services.[6]  Though Vizio previously owned roughly 10% of Cognitive on a fully-diluted basis prior to the August 10 acquisition, the transaction gave Vizio complete ownership of Cognitive's "Automatic Content Recognition" software for Smart TVs.[7]  This software permitted Vizio to collect users' video viewing habits, including specific

---

[4] *See id*.
[5] *See id.* at 3.
[6] *See id.* at 31.
[7] *See id.* at 78, F-24.

content viewed[8], which can be provided to data brokers, advertisers and content providers to enrich customer data, display custom and targeted advertisements to consumers, and otherwise enhance Vizio's ability to monetize its Smart TVs.

8.     Vizio's hardware and software transmit encrypted communications back to Vizio, and the amount and specificity of data that Vizio collects is staggering.  Vizio states that these encrypted communications contain "most content displayed on [Vizio Smart TV] screens, including content from cable and satellite providers, streaming devices and gaming consoles."[9] Further, Vizio collects up to 100 billion viewing points daily about "highly specific viewing data."[10]

9.     The value of Vizio's platform is directly tied to the breadth of the data it collects from consumers and Vizio's ability to link information to individuals, which it then sells to third parties.  Vizio states in its SEC filing that it "collect[s] meaningful viewing behavior data by matching attributes of content displayed on the screens of … connected Smart TVs to our database of existing content, such as movies, TV shows and games.  We must continue to develop and update this database and to match the content in this database to content displayed on [Smart TVs]. The process of developing this database is ongoing and incomplete, particularly with respect to content broadcast by local television stations.  Delays in developing this database of content may decrease the value of our Inscape data services."[11]

10.     On information and belief, Vizio knows that data brokers, advertisers, or other partners combine user identification information transmitted to them – including the user's IP

---

[8] *See id.* at 90 ("Inscape provides highly specific viewing behavior data on a massive scale with great accuracy, which can be used to generate intelligent insights for advertisers and media content providers and to drive their delivery of more relevant, personalized content through our [Smart TVs].")
[9] *See id.* at 3.
[10] *See id.* at 7.
[11] *See id.* at 28.

address and other device identification information – with information held by others to identify persons as having requested or obtained specific video materials or services.

11.     Vizio acknowledges that it discloses information it collects to various third parties, and states in its SEC filing that it installed Inscape, the Tracking Software, so it can use "real-time viewing behavior data to deliver more effective, targeted advertising campaigns… [T]he ability to collect and analyze real-time viewing data will enable measurable and increased return on marketing investment, enhance the value of television advertising, and drive increased television advertising spend."[12]

12.     On information and belief, Vizio determines the date, time, and channel of programs, and whether users watch the programming live or recorded.  The viewing patterns of the users are then connected to their IP address.  The IP address is the Internet address that then can be used to identify every device in a home, from household TVs to laptop computers.  Vizio is well aware that IP addresses can be linked to individuals through data brokers offering "data enrichment," which then combine additional information about persons tied to particular IP addresses provided by Vizio.

13.     On information and belief, Vizio has worked with such data brokers, which possibly includes Tapad, Neustar, and Experian.  Tapad helps identify users across their many devices.  Vizio's privacy policy concedes that it has begun providing data about customers' viewing habits to companies that "may combine this information with other information about devices associated with that IP address."  Vizio has full knowledge that such data can identify persons by name.

---

[12] *See id.* at 6.

14.     On information and belief, Vizio falsely states that it encrypts IP addresses before sharing them; however, data brokers whose data includes IP addresses tied to names can readily identify the persons and the prerecorded video cassette tapes or similar audio visual materials watched by those users merely by having their IP address or other device IDs.

15.     On information and belief, Vizio shares hashed or masked IDs in such a way that allows matching of users to information in other data sets.  This way data brokers can associate a device's viewing information with the personally identifiable information that the broker already holds, revealing the viewing habits of persons identified by the broker.

16.     On information and belief, Vizio knows such data can and in many instances will be recombined to identify persons and thereby raise the value of the person's data.  As such, Vizio had full knowledge that it was disclosing: 1) a user's identity; 2) the identity of the video material; and 3) the connection between the two – that the given user had "requested or obtained" the given video material.  Indeed, in Vizio's filing for an initial public offering on October 22, 2015, it touted its ability, through its Inscape data services platform, to provide "highly specific viewing behavior data on a massive scale with great accuracy."[13]

17.     Despite understanding that "some individuals may be reluctant or unwilling to connect to the Internet through our Smart TVs because they have concerns regarding the risks associated with data privacy and security,"[14] Vizio continues to infringe upon its consumers' privacy rights by undertaking actions set forth in the preceding paragraphs.

18.     Consumers subject to such tracking must affirmatively undertake extensive steps to "opt-out" of the data collection through an obscure and inconspicuous process.  Vizio's privacy

---

[13] *See* http://www.sec.gov/Archives/edgar/data/1648158/000119312515350398/d946612ds1a.htm, at 90.

[14] *See* http://www.sec.gov/Archives/edgar/data/1648158/000119312515350398/d946612ds1a.htm, at 28 ("If the wider public perceives data privacy or security concerns with respect to our Smart TVs, this could negatively impact the growth potential for the net sales of our Smart TVs and our Inscape data services").

policy, though available for viewing on Defendant's hardware, is accessible only after a user scrolls through and correctly selects four different and discreet menus.  Hardware settings that enable Defendants to collect personally identifiable information are set as the default and may only be turned off when the user resets the "Smart Interactivity" feature.  Defendants provide no clear information regarding the data collection that this "Smart Interactivity" feature provides.  Such hidden opt-out procedures violate the Video Privacy Protection Act ("VPPA"), which requires an "opt-in" procedure unless the disclosure of personal information is (a) solely of the names and addresses of consumers; (b) if the video tape service provider has provided the consumer with the opportunity, in a clear and conspicuous manner, to prohibit such disclosure; and (c) the disclosure does not identify the title, description, or subject matter of any video tapes or other audio visual material.  18 U.S.C. §2710(b)(2)(D).[15]

19.     Defendants disclosed information that was in addition to (not solely) the names and addresses of consumers; they did not provide Plaintiffs with a clear and conspicuous opportunity to prohibit the disclosure; and they identified specific titles and subject matter viewed by Plaintiffs.  Accordingly, Defendants cannot avail themselves of the benefits of the narrow opt-in exception provided by the VPPA.

## II.     PARTIES

20.     Plaintiff Steven Dassa ("Dassa") is a resident of Palm Beach County, Florida.  Dassa purchased a 32 inch Vizio Smart TV on or about June 2015 from Best Buy located at State Road 441 in Royal Palm Beach, Florida, Model number M322i-B1, serial number LTT7PVGR0102568.  Dassa purchased a 32 inch Vizio Smart TV on or about April 2015 from

---

[15] *See also* S. REP. NO. 112-258, at 8 (2012) ("Section 2710(b)(2) [was amended] to clarify that video tape service providers may obtain a customer's informed, written consent to share video viewing information on an ongoing basis and that such consent may be obtained via the Internet.  The provision also makes clear that the decision to share video viewing information must be at the consumer's election (i.e. "opt in").).

Best Buy located at State Road 441 in Royal Palm Beach, Florida, Model number E32-Ci1, serial number LTT7SJAR1500726.  Dassa purchased a 65 inch Vizio Smart TV on or about February 2014 from Costco located at Southern Boulevard, Royal Palm Beach, Florida.  Had Dassa known that Defendants installed Tracking Software on the television he purchased, he would not have purchased the television.  Accordingly, Dassa has suffered damages as the result of Defendants' installation and operation of their Tracking Software.

21.     Plaintiff Benjamin Hinerfeld ("Hinerfeld") is a resident of Philadelphia County, Pennsylvania.  Hinerfeld purchased a Vizio E-Series 24 inch Class Razor LED Smart TV on May 9, 2014 from Best Buy located in Plymouth Meeting, Pennsylvania.  Had Hinerfeld known that Defendants installed Tracking Software on the television he purchased, he would not have purchased the television.  Accordingly, Hinerfeld has suffered damages as the result of Defendants' installation and operation of their Tracking Software.

22.     Together, Dassa and Hinerfeld are referred to herein as Plaintiffs.

23.     Defendant Vizio Holdings, Inc., is a Delaware Corporation.  Its principal executive offices are located at 39 Tesla, Irvine, California.

24.     Defendant Vizio, Inc., is a California Corporation.  Its principal executive offices are located at 39 Tesla, Irvine, California.

25.     Defendant Vizio Inscape Services, LLC, is a Delaware Limited Liability Company.  On information and belief, its principal executive offices are located at 39 Tesla, Irvine, California.

26.     Defendant Vizio Inscape Technologies, LLC, is a Delaware Limited Liability Company.  On information and belief, its principal executive offices are located at 39 Tesla, Irvine, California.

27. Defendant Cognitive Media Networks, Inc., is a Delaware Corporation registered to do business in the State of California. Its principal executive offices are located at 39 Tesla, Irvine, California.

28. The true names and capacities of Does 1 through 50 are unknown to Plaintiffs. Plaintiffs are informed and believe and thereupon allege that each of these Defendants is in some way liable for the events referred to in this complaint and caused damage to Plaintiffs. Plaintiffs will amend this Complaint and insert the correct names and capacities of those Defendants when they are discovered.

29. At all times mentioned, each of the Defendants – including Does 1 through 50 – was the representative, agent, employee, joint venture, or alter ego of each of the other Defendants and in doing the things alleged herein was acting within the scope of its authority as such.

### III. JURISDICTION AND VENUE

30. This Court has subject matter jurisdiction over this action because this action presents a federal question under the Video Privacy Protection Act, 18 U.S.C. §2710, *et seq.*; under 28 U.S.C. §1332 of the Class Action Fairness Act because the matter in controversy exceeds the sum or value of $5,000,000 exclusive of interest and costs; and because Plaintiffs and Defendants are residents of different states.

31. Venue is proper in this District pursuant to 28 U.S.C. §1391 because Dassa resided in and suffered injuries as a result of Defendants' acts in this District; many of the acts and transactions giving rise to this action occurred in this District, and Defendants (1) are authorized to conduct business in this District and have intentionally availed themselves of the laws and markets of this District through the manufacture, distribution and sale of their products in this District; and (2) are subject to personal jurisdiction in this District.

## IV.    CLASS ACTION ALLEGATIONS

32.    Plaintiffs bring this lawsuit as a class action on their own behalf and on behalf of all other persons similarly situated as members of the proposed Class, pursuant to Federal Rules of Civil Procedure 23(a), (b)(1), and (b)(3).

33.    The proposed Class is defined as:

> All persons or entities who purchased one or more Vizio Smart TVs within the United States, in United States territories, and U.S. service people and citizens who have purchased one or more Vizio Smart TVs and who viewed content broadcast over the Internet on the Vizio Smart TV(s) from the four years before the first complaint in this matter is filed through the time of trial.

> In the alternative to a nationwide Class, Plaintiffs seek to represent two subclasses defined

as:

> **Florida Class:**  All persons or entities who purchased one or more Vizio Smart TVs in Florida and who viewed content broadcast over the Internet on the Vizio Smart TV(s) from the four years before the first complaint in this matter is filed through the time of trial.

> **Pennsylvania Class**:  All persons or entities who purchased one or more Vizio Smart TVs in Pennsylvania and who viewed content broadcast over the Internet on the Vizio Smart TV(s) from the four years before the first complaint in this matter is filed through the time of trial.

34.    Excluded from the Class are Defendants, their affiliates, employees, agents and attorneys, and the Court.

35.    Plaintiffs reserve the right to amend the Class definitions if discovery and further investigation reveal that any Class should be expanded, divided into additional subclasses, or modified in any other way.

36.    **Numerosity**: The exact number of Class Members is presently unknown. However, the size of the Class can be estimated with reasonable precision.  Based upon the Defendants' representations in its SEC-1/A filing that their "products are sold in over 8,000 retail stores

throughout the United States" and that they held the "#2 unit share position in the US smart, high definition television, or HDTV, industry in 2014" and seek to create "a community of over 10 million VIZIO connected units, or VCUs,"[16] it is reasonable to presume that the members of the Class are so numerous that joinder of all members is impracticable.

37.     Insofar as Class Members may be identified through business records regularly maintained by Defendants and their employees and agents, the number and identities of Class Members can be ascertained.  Members of the Class can readily be notified of the pending action.

38.     The disposition of the claims of these Class Members in a single action will provide substantial benefits to all parties and to the Court.

39.     **Commonality**: There are numerous questions of law and fact common to Plaintiffs and Class Members that predominate over any question affecting only individual Class Members. The answers to these common questions will advance resolution of the litigation as to all Class Members.  These common legal and factual issues include:

a.      whether the Defendants gathered, stored and transmitted the private information about their Vizio Smart TV customers to third parties;

b.      whether Defendants knew or should have known that the private customer information and viewing habits of its Smart TV customers could be easily combined with Internet IP address of each customer;

c.      whether Defendants failed to take the steps necessary to ensure that the private, identifiable information of their individual customers was not disclosed to third parties;

---

[16] *See* http://www.sec.gov/Archives/edgar/data/1648158/000119312515350398/d946612ds1a.htm, at 2.

d.      whether Defendants made material misrepresentations regarding the collection, storage, distribution, disclosure and utilization of their Smart TV customers' personally identifiable information;

e.      whether Defendants had a duty to disclose the true nature of their data collection and dissemination practices to Plaintiffs and Class Members;

f.      whether Defendants omitted and failed to disclose material facts about their data collection and dissemination;

g.      whether Defendants' concealment of the true nature of the data collection, dissemination and utilization induced reasonable consumers to act to their detriment by purchasing one or more Vizio Smart TVs;

h.      whether Defendants' conduct described herein constitutes a violation of the Video Privacy Protection Act, 18 U.S.C. §2710;

i.      whether Defendants' conduct described herein constitutes a violation of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §501.201 (2005);

j.      whether Defendants' conduct described herein constitutes a violation of the Pennsylvania Uniform Trade Practices and Consumer Protection Law, 73 P.S. §201-1 *et seq.* ("UTPCPL"); and

k.      whether Plaintiffs and Class Members are entitled to injunctive and equitable relief.

40.     **<u>Typicality</u>**: Claims of the representative Plaintiffs are typical of the claims of the Class because Plaintiffs, like all Class Members, purchased one or more Vizio Smart TVs, connected them to the Internet as intended, and used the TV(s) for their own personal use. Plaintiffs, like all Class Members, have been damaged by Defendants' conduct because they have had their private, identifiable viewing habits and information obtained by Defendants and

distributed to third parties without their knowledge or consent.  Further, the factual bases of Defendants' misconduct are common to all Class Members and represent a common thread of misconduct resulting in injury to all Class Members.

41.     **Adequacy of Representation**: Plaintiffs are members of the Class and will fairly and adequately represent and protect the interests of the Class.  Plaintiffs have retained counsel with substantial experience in prosecuting complex consumer class actions.

42.     Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of the Class and have the financial resources to do so.  Neither Plaintiffs nor their counsel have interests adverse to those of the Class.

43.     **Superiority of Class Action**: Plaintiffs and Class Members have all suffered and will continue to suffer harm and damages as a result of Defendants' unlawful and wrongful conduct.  A class action is superior to other available methods for the fair and efficient adjudication of this controversy.  Absent a class action, most Class Members would likely find the cost of litigating their claims prohibitively high and would therefore have no effective remedy at law. Because of the relatively small size of the individual Class Members' claims, it is likely that only a few Class Members could afford to seek legal redress for Defendants' misconduct.  Absent a class action, Class Members will continue to incur damages, Class Members and the general public will continue to be misled, Defendants will retain monies received as a result of their conduct that was taken from Plaintiffs and proposed Class Members, and Defendants' misconduct will continue without remedy.

44.     Class action treatment of common questions of law and fact would also be a superior method to multiple individual actions or piecemeal litigation in that class treatment will

conserve the resources of the courts and the litigants, and will promote consistency and efficiency of adjudication.

45.     Defendants have acted in a uniform manner with respect to the Plaintiffs and Class Members.

46.     Class-wide declaratory, equitable, and injunctive relief is appropriate under Rule 23(b) of the Federal Rules of Civil Procedure because Defendants have acted on grounds that apply generally to the Class, and inconsistent adjudications with respect to Defendants' liability would establish incompatible standards and substantially impair or impede the ability of Class Members to protect their interests.  Class-wide relief assures fair, consistent, and equitable treatment and protection of all Class Members, and uniformity and consistency in Defendants' duties to perform corrective action regarding the Vizio Smart TVs.

## V.     FIRST CAUSE OF ACTION

### Violations of the Video Privacy Protection Act
### 18 U.S.C. §2710, *et seq.*
### (On Behalf of Plaintiffs and the Class)

47.     Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

48.     Defendants qualify now and have qualified in the past as a "video tape service provider" under the Video Privacy Protection Act ("VPPA"), because Defendants are "engaged in the business, in or affecting interstate or foreign commerce, of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials."   18 U.S.C. §2710(a)(4). Defendants do this through the delivery of videos (*i.e.*, "similar audio visual materials," as defined by the VPPA) to consumers through their Smart TVs.

49.     Specifically, as detailed in this Complaint, Defendants facilitate the transmission of specific video titles to be made to consumers through their services that allow consumers to watch movies and shows, listen to music, and access applications on demand.

50.     Plaintiffs are "consumers" as defined by the VPPA because they are a "renter, purchaser or subscriber of goods or services from a video tape service provider," namely, Defendants. 18 U.S.C. §2710(a)(1).  Specifically, Plaintiffs purchased televisions manufactured, marketed, and distributed by Vizio, and paid a premium for Vizio's Smart TV functionality.  As such, they paid for, and Vizio intended to create, a continuing and ongoing relationship between themselves and Vizio for access to premium Smart TV features, including access to movies and television shows on demand.  By viewing movies and television shows on their Smart TVs, Plaintiffs unknowingly and without their consent gave Defendants access to their personally identifiable information, as alleged herein.  For example, Vizio's Tracking Software collected information on the specific movies or shows viewed, performed a scan of Plaintiffs' home network for unique identifiers such as computer names or product serial numbers, and transmitted the collected information to Vizio.

51.     The VPPA mandates, among other things, that a video tape service provider "shall destroy personally identifiable information as soon as practicable, but no later than on the date the information is no longer necessary for the purpose for which it was collected."  18 U.S.C. §2710(e).

52.     Defendants have violated 18 U.S.C. §2710(e) because they have failed to destroy their users' personally identifiable information as soon as practicable from the date the information was no longer necessary for the purpose for which it was collected.

53.     The VPPA also requires Defendants to keep their customers' personally identifiable information confidential.  18 U.S.C. §2710(b)(1).

54.     "Personally identifiable information" includes but is not limited to "information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider."  18 U.S.C. §2710(a)(3).  Personally identifiable information cannot be disclosed to "any person without the informed, written consent of the consumer given at the time the disclosure is sought."  18 U.S.C. §2710(b)(2)(B).

55.     As owners and users of the Vizio Smart TV, Plaintiffs' personally identifiable information was disclosed for marketing and advertising purposes without their informed, written consent.

56.     Defendants transmitted Plaintiffs' personally identifiable information to data brokers and advertisers.  Defendants disclose personally identifiable information to data brokers to "enhance" the information with other demographic information about Plaintiffs, and then disclose the enhanced information to advertisers with the express intention to "generate meaningful revenue."[17]

57.     Defendants' use of such information constitutes "knowing[] disclosures" of Plaintiffs' personally identifiable information.  The VPPA prohibits such knowing disclosures.  18 U.S.C. §2710(b)(1).

58.     At no time did Plaintiffs provide any Defendants or unnamed third parties with any form of consent, written or otherwise, to collect or disclose their personally identifiable information to third parties.

59.     Nor were Defendants' disclosures made in the "ordinary course of business," as defined in the VPPA.  Defendants' disclosures to data brokers and advertisers were not necessary

_____

[17] *See* http://www.sec.gov/Archives/edgar/data/1648158/000119312515350398/d946612ds1a.htm, at 3.

for "debt collection activities, order fulfillment, request processing [or] the transfer of ownership." *Id.*, §2710(a)(2), (b)(2)(E).

60.    Nor did Defendants disclose solely the names and addresses of Plaintiffs in connection with an opportunity for Plaintiffs to prohibit such disclosure in a clear and conspicuous manner, and without identifying the title, description or subject matter of the content of Plaintiffs' viewing habits.  *Id.*, §2710(b)(2)(D); *see, supra*, ¶¶18-19.

61.    As a result of Defendants' conduct described herein and its violation of §2710, Plaintiffs and the Class have suffered injuries, namely, the violation of their right to privacy as defined by the VPPA.  Plaintiffs, on their own behalf and on behalf of the Class, seek an order enjoining Defendants' conduct described herein and awarding themselves and the Class the maximum statutory and punitive damages available under 18 U.S.C. §2710(c), as well as such other and further relief as the Court deems just and proper.

## VI.    SECOND CAUSE OF ACTION

### Violations of Florida's Deceptive and Unfair Trade Practices Act, Fla. Stat. §501.201, *et seq.* (2005)
(On Behalf of Plaintiffs and the Class)

62.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

63.    Plaintiff Dassa resides and bought his Vizio Smart TVs in Florida.

64.    Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. §501.201 *et seq.* (2005), protects both consumers and competitors by promoting fair competition in commercial markets for goods and services.  FDUTPA explicitly states that its policy is, *inter alia*, "[t]o make state consumer protection…consistent with established policies of federal law relating to consumer protection."  *Id.* at §501.202(3).

65.     Plaintiff Dassa and the Class Members are consumers within the meaning of FDUTPA.

66.     Defendants, through their conduct, are engaged in trade and/or commerce within the meaning of FDUTPA.

67.     FDUTPA prohibits any unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce.  *Id.* at §501.204 (2005).  A business practice need only meet one of three criteria to be considered unfair competition.  "Trade or commerce" means the advertising, soliciting, providing, offering, or distributing, whether by sale, rental, or otherwise, of any good or service, or any property, whether tangible or intangible, or any other article, commodity, or thing of value, wherever situated.  *Id.* at §501.203(8).  A violation of FDUTPA includes any violation based on any rules promulgated pursuant to, *inter alia*, the Federal Trade Commission Act, 15 U.S.C. §41, or any law, statute, rule, regulation or ordinance which proscribes unfair methods of competition, or deceptive practices.  Fla. Stat. §501.203(3)(a), (c) (2005).

68.     The purchase of Smart TVs by Plaintiff Dassa and Class Members, as described herein, constitutes consumer transactions within the meaning of FDUTPA.

69.     Vizio has violated the deceptive prong of FDUTPA in that it failed to inform Plaintiffs and the Class that it would indefinitely retain and sell their personally identifiable information and programming viewing histories.

70.     The representations and omissions by Defendants were likely to deceive reasonable consumers.  A reasonable consumer would have relied on these representations and omissions. The representations at issue in this litigation were material to Plaintiffs and any reasonable consumer.

71.     Defendants have violated the unfair prong of FDUTPA in that they continue to profit from selling Plaintiffs' and the Class's personally identifiable information to third parties, without obtaining their consent; in that they are violating the public policies set forth in the VPPA, as set forth in this Complaint; and in that the utility of the Defendants' conduct is outweighed by the gravity of the harm to Plaintiffs and the Class.

72.     Defendants have violated the unlawful prong of FDUTPA in that their conduct violated the Video Privacy Protection Act, 18 U.S.C. §2710, *et seq.*, as set forth in this Complaint.

73.     Had Defendants disclosed all material information regarding the Smart TVs and the Tracking Software to Plaintiffs and other members of the Class, Plaintiffs would not have purchased the Smart TVs, or would have paid substantially less for them.

74.     As a direct and proximate result of Defendants' violations of FDUTPA, Plaintiffs and the Class have suffered injury in fact and/or actual damage and/or ascertainable loss by purchasing the Smart TVs and by the use and disclosure of their personally identifiable information without consent.

75.     Pursuant to Fla. Stat. §501.211, Plaintiff Dassa, on his own behalf and on behalf of the Class, seeks a declaratory judgment that Defendants violated FDUTPA, an order enjoining Vizio from continuing to engage in the unfair and unlawful conduct described herein, an award of attorneys' fees and costs pursuant to Fla. Stat. §501.210, as well as such other and further relief as the Court deems just and proper.

## VII.   THIRD CAUSE OF ACTION

**Violations of Pennsylvania's Unfair Trade Practices and Consumer Protection Law**
**73 P.S. §201-1, *et seq.***
**(On Behalf of Plaintiffs and the Class)**

76.     Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

77.     Plaintiff Hinerfeld resides and bought his Vizio Smart TV in Pennsylvania.

78.     Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 P.S. §201-1, *et seq.*, protects both consumers and competitors by promoting fair competition in commercial markets for goods and services.

79.     Plaintiff and the Class Members have a private right of action within the meaning of UTPCPL in that they purchased or leased goods primarily for personal, family or household purposes and thereby suffered ascertainable loss of money or property, real or personal, as a result of the use or employment of a method, act or practice declared unlawful by UTPCPL. *Id.* at §201-9.2.

80.     Defendants, through their conduct, are engaged in trade and/or commerce within the meaning of UTPCPL. *Id.* at §201-2(3).[18]

81.     The purchase of Smart TVs by Plaintiffs and Class Members, as described herein, constitutes trade and commerce within the meaning of UTPCPL. *Id.*

82.     UTPCPL prohibits unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce. *Id.* at §201-3.

83.     Defendants have violated UTPCPL in that they engaged in deceptive conduct which creates a likelihood of confusion or misunderstanding. *Id.* at §201-2(4)(xxi). Defendants created a misunderstanding when they failed to inform Plaintiffs and the Class that they would indefinitely retain and sell their personally identifiable information and programming viewing histories. Further, Defendants continue to profit from selling Plaintiffs' and the Class's personally identifiable information to third parties, without obtaining their consent.

---

[18] "'Trade' and 'commerce' mean the advertising, offering for sale, sale or distribution of any services and any property, tangible or intangible, real, personal or mixed, and any other article, commodity, or thing of value wherever situated, and includes any trade or commerce directly or indirectly affecting the people of this Commonwealth." *Id.*

84.     The representations and omissions by Defendants were likely to deceive reasonable consumers.  A reasonable consumer would have relied on these representations and omissions. The representations at issue in this litigation were material to Plaintiffs and any reasonable consumer.

85.     Had Defendants disclosed all material information regarding the Smart TVs and the Tracking Software to Plaintiffs and other members of the Class, they would not have purchased the Smart TVs, or would have paid substantially less for them.

86.     As a direct and proximate result of Defendants' violations of UTPCPL, Plaintiffs and the Class have suffered injury in fact and/or actual damage and/or ascertainable loss by purchasing the Smart TVs and use and disclosure of their personally identifiable information without consent.

87.     Pursuant to P.S. §201-9.2, Plaintiff Hinerfeld, on his own behalf and on behalf of the Class, seeks a declaratory judgment that Defendants violated UTPCPL, an order enjoining Defendants from continuing to engage in the deceptive conduct which creates a likelihood of confusion or misunderstanding as described herein, actual damages in an amount to be determined at trial, an award of attorneys' fees and costs pursuant to P.S. §201-9.2, as well as such other and further relief as the Court deems just and proper.

## PRAYER FOR RELIEF

88.     Plaintiffs, individually and on behalf of all others similarly situated request the Court to enter judgment against Defendants as follows:

21

A.  An order certifying the proposed Class, designating Plaintiffs as the named representatives of the Class, and designating the undersigned as Class Counsel;

B.  A declaration that Defendants are financially responsible for notifying Class members about the true nature of Vizio Smart TVs;

C.  An order enjoining Defendants to desist from further deceptive distribution, marketing and sales of non-compliant Vizio Smart TVs;

D.  An award to Plaintiffs and Class Members of compensatory, exemplary, punitive and statutory penalties and damages, including interest, in an amount to be proven at trial;

E.  An award to Plaintiffs and Class Members for the return of the purchase prices of the Vizio Smart TVs, with interest from the time it was paid for the reimbursement of the reasonable expenses occasioned by the sale, for damages and for reasonable attorneys' fees;

F.  A declaration that Vizio must disgorge, for the benefit of Plaintiffs and Class Members all or part of the ill-gotten profits received from the sale of their personally identifiable information to third parties, and make full restitution to Plaintiffs and Class Members;

G.  An award of attorneys' fees and costs as allowed by law;

H.  An award of pre-judgment and post-judgment interest, as provided by law;

I.  Leave to amend this Complaint to conform to the evidence produced at trial; and

J.  Such other relief as may be appropriate under the circumstances.

## JURY DEMAND

Plaintiffs demand a trial by jury on all causes of action so triable.

DATED: January 25, 2016                    **POMERANTZ LLP**

*/s/ Jayne A. Goldstein*
Jayne A. Goldstein
1792 Bell Tower Lane
Weston, FL 33326
T: 561-270-0795
F: 954-315-3454
jagoldstein@pomlaw.com

*Attorney for Plaintiffs*